# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **BRENDAN J. G.**, | Case No. 6:17-cv-742-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **COMMISSIONER, SOCIAL SECURITY ADMINISTRATION**, | |
| Defendant. | |

Katherine Eitenmiller and Mark A. Manning, HARDER WELLS BARON & MANNING, PC, 474 Willamette Street, Suite 200, Eugene, OR 97401. Of Attorneys for Plaintiff.

Billy J. Williams, United States Attorney, and Renata Gowie, Assistant United States Attorney, UNITED STATES ATTORNEY'S OFFICE, 1000 S.W. Third Avenue, Suite 600, Portland, OR 97204; Erin F. Highland, Special Assistant United States Attorney, OFFICE OF GENERAL COUNSEL, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

Plaintiff Brendan J. G. seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner"). For the reasons discussed, the Commissioner's decision is affirmed.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

## BACKGROUND

### A. Plaintiff's Application

Plaintiff, who is 25 years old, protectively filed applications for Child's Insurance Benefits and Supplemental Security Income on November 16, 2012. Plaintiff alleged a disability onset date of January 1, 2007. Plaintiff's claims were denied initially and upon reconsideration.

Plaintiff requested a hearing, which was held on July 1, 2015, before Administrative Law Judge ("ALJ") Cynthia D. Rosa. AR 14. On October 29, 2015, the ALJ issued a decision denying Plaintiff's claim. AR 14-30. The Appeals Council denied review on March 16, 2017, making the ALJ's decision the final decision of the agency.

## B. The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R. §§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks the following series of questions:

1.  Is the claimant performing "substantial gainful activity?" 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2.  Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death, this impairment must have lasted or be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R.

§§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3.      Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4.      Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5.      Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c), 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this

burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

## C. The ALJ's Decision

At Step One, the ALJ found that since the alleged onset date of January 1, 2007, Plaintiff had not engaged in substantial gainful activity. AR 17. At Step Two, the ALJ found that Plaintiff has the following severe impairments: Bipolar Disorder, Not Otherwise Specified; Anxiety Disorder; Attention Deficit Disorder; and Post-Traumatic Stress Disorder. AR 18. At Step Three, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ then assessed the following residual functional capacity ("RFC"):

> [T]he claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations. He can perform work that does not involve concentrated exposure to hazards. He can perform work that involves simple routine tasks. He can perform work that does not involve contact with the public or more than superficial contact with co-workers.

AR 20.

At Step Four, the ALJ noted that Plaintiff has no past relevant work. At Step Five, the ALJ concluded that considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. AR 28. The ALJ therefore concluded that Plaintiff is not disabled. AR 29.

**DISCUSSION**

Plaintiff objects to the decision of the Commissioner on three grounds. First, Plaintiff argues that the ALJ did not adequately account for Plaintiff's social limitations in the hypothetical the ALJ posed to the vocational expert and in the ALJ's determination of the RFC. Second, Plaintiff argues that the ALJ improperly discounted the medical source opinions of two doctors. Third, Plaintiff argues that the ALJ improperly discredited Plaintiff's subjective symptoms testimony.

**A. Whether the Properly ALJ Accounted for Plaintiff's Social Limitations**

State agency psychological consultant Joshua Boyd, PsyD, reviewed Plaintiff's medical record. Dr. Boyd concluded that Plaintiff was not significantly limited in several areas, but moderately limited in others, including in Plaintiff's ability to accept instructions and respond appropriately to criticism from supervisors. When responding to the instruction to "[e]xplain in narrative form the social interaction limitations indicated above," Dr. Boyd opined that Plaintiff "would do best working alone, w/ supportive supervisor (no need for special supervision) in non-critical setting." AR 73. Upon reconsideration, state agency psychological consultant Kordell N. Kennemer, PsyD, affirmed this opinion. AR 120-21. The ALJ fully credited and assigned significant weight to these opinions. Plaintiff argues that the ALJ posed a defective hypothetical to the vocational expert and assessed a flawed, incomplete RFC that exceeded the concrete limitations in the medical opinions, because the ALJ did not account for any limitation in Plaintiff's ability to interact appropriately with supervisors.

Defendant relies on *Valentine v. Comm'r*, 574 F.3d 685 (9th Cir. 2009), in which a claimant asserted that an ALJ failed to account for a doctor's statement that "limited him to highly routinized, overlearned tasks with low cognitive demand." *Valentine*, 574 F.3d at 691 (quotation marks omitted). The court explained that, although the doctor noted that the claimant

"is less likely to have difficulty with [such tasks]," this notation was framed as a recommendation, and the doctor did not indicate that the claimant would be "incapable of working *except* under the recommended conditions." *Id.* (alteration and emphasis in original). The statement was thus "neither a diagnosis nor statement of [the claimant's] functional capacity," but "a recommended way for [the claimant] to cope with his PTSD symptoms." *Id.* at 691-92. Thus, the court concluded, the ALJ "did not err by excluding it from the RFC." *Id.* at 692; *see also Fox v. Berryhill*, 2017 WL 3197215, at *5 (C.D. Cal. July 27, 2017) ("Dr. Oritt stated preferences, not requirements, for work that would accommodate Plaintiff's limitations. The ALJ's interpretation of those recommendations was reasonable; she was not required to address every word of Dr. Oritt's opinion.").

Although Dr. Boyd and Dr. Kennemer specifically opined that Plaintiff was moderately limited in his ability to interact with supervisors, when asked to narratively explain precisely what that limitation meant, neither indicated that Plaintiff needed any "special supervision," or that Plaintiff could not work with a supervisor. Notably, the doctors *did* note that Plaintiff was "precluded from working closely w/ coworkers or the public"—indicating that they knew how to describe such a limitation. Like in *Valentine* and *Fox*, the statement that Plaintiff "would do best working alone," with a "supportive supervisor," and in a "non-critical setting" was a recommendation, preference, or perhaps a way for Plaintiff to cope with his conditions. As Defendant notes, an RFC represents "the most you can still do despite your limitations." 20 C.F.R. § 404.1545(a)(1); *see also Bagby v. Comm'r*, 606 F. App'x 888, 890 n.1 (9th Cir. 2015) ("We reject Bagby's argument that the ALJ erred in failing to incorporate Dr. Stuckey's findings regarding Bagby's limited ability to interact with supervisors. As the record reflects, the ALJ included limitations in interactions with coworkers, and Bagby has not demonstrated a basis for

distinguishing between interactions with coworkers and supervisors."). The Court concludes that the ALJ's interpretation of these reports and fashioning of the RFC was reasonable.

## B. Plaintiff's Subjective Symptom Testimony

### 1. Standards

There is a two-step process for evaluating a claimant's testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, "the claimant need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345-46). The ALJ's credibility decision may be upheld overall even if not all of the ALJ's reasons for rejecting the claimant's testimony are upheld. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004). The ALJ may not, however, make a

negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

### 2. Plaintiff's Testimony

Plaintiff testified that he does not think he would be able to work full-time. AR 45. Plaintiff testified that he has daily anxiety attacks and panic attacks about once or twice per week. AR 52. Plaintiff explained that during an anxiety attack, he gets clammy, sweaty, and worried, and has difficulty thinking straight. AR 52-53. Panic attacks are more severe, and can get so extreme that Plaintiff faints, gets tunnel vision, or feels like he is going to "black out," has a racing heart, or feels numb. AR 53. Plaintiff testified that at times during 15 or 20 minute drives he gets panic attacks and needs to pull over. Plaintiff takes medication, Lorazepam, for these attacks, and finds that the medication works about 60 or 65 percent of the time. AR 53. Plaintiff testified that he sleeps about four hours per night on average. AR 54.

Plaintiff cooks his own meals but does not do any grocery shopping, laundry, or other housework, which his mother generally does. AR 49. Plaintiff testified that he does not ever go out of town. AR 50. Plaintiff testified that he does not get along with some of his friends, and does not get along at all with his mother and stepfather, with whom he is living. AR 56. Plaintiff also testified that he drives about three times per week to a friend's house. AR 43. When he sees his friends, he typically does so for a few hours, and they play board games or video games, barbeque, or go to a lake or river. AR 48, 50. Plaintiff sees his children twice per week—his son for a couple hours, and his daughter overnight. AR 48, 50. He plays with them, cooks them food, takes them for walks, and watches movies with them. AR 48. Plaintiff also testified that when he is home, he plays video games, watches television, and makes music, which he records. Plaintiff plays the guitar, piano, cello, violin, kalimba, and keyboard. AR 50. Plaintiff states that he used

to play music more often, but at the time of his hearing only did so about once a week due to increasing depression over the prior eight months. AR 50-51.

The ALJ concluded that although Plaintiff's medically determinable impairments could reasonably be expected to cause some of Plaintiff's alleged mental health symptoms, Plaintiff's statements regarding the intensity, persistence, and limiting effects of his symptoms were not credible. The ALJ gave several reasons for this finding, and the Court concludes that the ALJ did not err in rejecting Plaintiff's assertions about the limiting effects of his symptoms.

### 3. Evidence Undermining or Inconsistent with Plaintiff's Allegations

The ALJ stated that evidence throughout the record undermined Plaintiff's allegations regarding his functional limitations, and found that Plaintiff's activities in his personal life were inconsistent with Plaintiff's claimed limitations. The ALJ also pointed to inconsistencies between Plaintiff's testimony and prior statements to medical providers. Inconsistency with the medical record, prior inconsistent statements, and inconsistency between a Plaintiff's alleged limitations and actual activities are all valid reasons to discount a Plaintiff's own statements about the severity of his or her own symptoms. *See Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) (discrepancies between testimony and medical record); *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) ("An ALJ may consider a range of factors in assessing credibility, including '(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities.'"); *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir.2012) (ALJ may discredit a claimant's testimony when activities of daily living that "indicat[e] capacities that are transferable to a work setting" or "contradict claims of a totally debilitating impairment").

Plaintiff testified at his hearing that he had anxiety attacks daily and panic attacks one or two times weekly. AR 52-53. The ALJ noted, however, that the medical evidence indicated that Plaintiff has panic attacks a few times per month, at most. AR 437, AR 537 (reporting no longer having panic attacks). Plaintiff also testified that he had not taken any out of town trips in the past few years. But, the ALJ noted, evidence showed that he traveled to Washington State to attend Comic-Con. AR 491, 549. The ALJ also noted that Plaintiff claimed to average only four hours of sleep per night, but other evidence revealed no notable sleeping problems. AR 435 (sleep ranging between 6-12 hours per night); AR 514 (sleep averaging six hours per night). When asked what precluded him from working full-time, Plaintiff testified that he has problems finding employment because of a felony on his record, a statement that the ALJ found "strongly suggests that he has not been working for reasons unrelated to his claimed disability." AR 25.

With regard to inconsistency with objective findings, the ALJ also pointed out that Plaintiff's performance during psychological examinations revealed that he retained the cognitive ability to perform routine simple tasks, and that Plaintiff is consistently engaged in a cooperative manner with medical professionals, indicating that he is able to tolerate some level of social interaction in the workplace.

Plaintiff has asserted that he has problems being around people and in social situations. But, the ALJ noted, Plaintiff enjoys a fairly active social life, which is inconsistent with an individual with debilitating social limitations. For instance, Plaintiff testified that he socializes with friends three times weekly, and that such social activities include going to a lake or river, having barbeques, and playing board games or video games. AR 25. The ALJ further pointed to evidence in the record that Plaintiff attended Comic-Con and uses public transportation. AR 516, 491. The ALJ also noted that Plaintiff alleged significant difficulties engaging in

activities due to low motivation and cognitive limitations, but evidence showed that Plaintiff regularly engaged in mentally-demanding tasks, such as playing multiple musical instruments, playing video and computer games, composing music, and creating YouTube videos. AR 337, 340, 360, 494, 495, 516. Plaintiff was also able to study for and obtain his GED. AR 544, 551, 555. All in all, the ALJ found, Plaintiff's activities show a fairly high level of mental functioning, inconsistent with Plaintiff's claimed functional limitations.

With respect to inconsistent statements or evidence undermining Plaintiff's subjective complaints, Court concludes that the ALJ provided several clear and convincing reasons, supported by substantial evidence in the record, to disregard Plaintiff's testimony.

### 4. Conservative Treatment

The ALJ also cited conservative treatment as a reason to disregard Plaintiff's subjective allegations. The ALJ noted that Plaintiff takes Lorazepam as needed for panic attacks, which is effective most of the time, Plaintiff does not take medication for depression. The ALJ found this to be inconsistent with an individual with debilitating mental health conditions.

"[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment." *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) (quoting *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995)). The Ninth Circuit has cautioned, however, against using "a lack of treatment to reject mental health complaints both because mental illness is notoriously underreported and because 'it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation.'" *Regenniter v. Comm'r*, 166 F.3d 1294, 1299-1300 (9th Cir. 1999) (quoting *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996)). Additionally, the "failure to receive medical treatment during [a] period [where a claimant has] no medical insurance cannot support an adverse credibility finding." *Orn v. Astrue*, 495 F.3d 625 (9th Cir. 2007).

There is some evidence in the record of Plaintiff trying, but being unable to, receive certain treatment. AR 47 (Plaintiff testifies that he had tried to make an appointment at a mental health clinic but was unable to); AR 431 (Dr. Richardson notes that Plaintiff and his partner were unable to pay for a full psychological assessment). But, there is also little evidence of providers recommending *more* treatment for Plaintiff, over and above therapy or as-needed Lorazepam. Plaintiff reports that he took an additional medication, Valproic Acid (AR 51, 331, 427), for "a while," but Plaintiff points to no evidence explaining what this was prescribed for, how long Plaintiff took it, whether it helped, or whether any other providers suggested Plaintiff continue taking it or any long-term medication. At one point, Dr. Albert Thompson prescribed Depakote. AR 465. Plaintiff did not take this medication because he wanted to consult with a different provider before doing so. AR 460. More often, however, providers referred Plaintiff for mental health counseling or therapy. AR 504, 542, 532; *see also* AR 547 (noting plan to "continue to assess and address possibility" of prescribing other medication for depression and anxiety).

Although courts must exercise caution in finding that conservative mental health treatment discredits a claimant's allegations about the severity of his or her symptoms, in this case, considering the record as a whole, the Court concludes that this reason for discounting Plaintiff's complaints was specific and legitimate, and supported by substantial evidence.

### 5.  Situational Stressors

The ALJ also noted, based on Plaintiff's medical records, that the majority of his mental health symptoms stemmed from "various situational stressors in his life." Plaintiff argues that his diagnosed bipolar disorder is characterized by waxing and waning symptoms and manic and depressive episodes. Plaintiff argues that although he may have certain situational stressors, they are not the cause of Plaintiff's periods of exacerbated symptoms. Plaintiff also states that there is no evidence that Plaintiff's panic attacks are a response to situational stressors.

The ALJ pointed to numerous places in the record where Plaintiff identified aspects of his life that were causing stress. In several cases, however, those were in the form of treatment notes from counseling sessions, or other visits, that were primarily updates on what was going on in Plaintiff's life. AR 466, 488-97, 523. Such notes do not necessarily suggest that Plaintiff's symptoms were caused by those stressors, or that Plaintiff would not have had such symptoms in the absence of those issues. Further, because mental health conditions may presumably *cause* strained personal relations or other life stressors, the Court is not inclined to opine that one has caused the other based only on the fact that they occur simultaneously. *Compare Bryant v. Astrue*, 2012 WL 5293018, at *7 (W.D. Wash. Sept. 24, 2012), *report and recommendation adopted*, 2012 WL 5293016 (W.D. Wash. Oct. 26, 2012) ("Although the Court agrees with the ALJ that the record reflects some exacerbation of plaintiff's mental health symptoms in response to stress, the Court cannot agree with the ALJ's finding that these situational stressors are isolated and sporadic events that have exacerbated plaintiff's mental health symptoms only temporarily. On the contrary, the record suggests a continuum of situational stressors in plaintiff's life which affect her ability to cope in a way that allows her to work on a regular and continuing basis. Plaintiff's argument that chronic situational stressors are typical for her dependent personality disorder, and do not indicate a lack of credibility on her part, is therefore well-taken."), *with Menchaca v. Comm'r*, 2016 WL 8677320, at *7 (D. Or. Oct. 7, 2016) ("The ALJ's reliance on this evidence to conclude that [the claimant's] symptoms were sometimes caused by situational stressors is a reasonable interpretation of the record, and thus the Court finds it a legitimate reason to discount her credibility.").

In this case, however, the ALJ also noted, and there is evidence of, several instances in which providers specifically assessed "situational depression," or identified Plaintiff's anxiety or

depression as being caused by issues in his personal life, or where Plaintiff reported that he was depressed *because of* such issues. AR 486, 540, 457. "When evidence reasonably supports either confirming or reversing the ALJ's decision, we may not substitute our judgment for that of the ALJ." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014). Based on the evidence in this case, the Court concludes that the ALJ's finding that "situational stressors" frequently contributed to Plaintiff's symptoms was a valid reason to discount Plaintiff's testimony.

### 6. Other Reasons

The ALJ noted that Plaintiff's scores on the Minnesota Multiphasic Personality Inventory-2 suggested that he had inflated his mental health symptoms. AR 435. The ALJ acknowledged that Dr. Richardson, who administered the test, did not believe that Plaintiff was malingering. But, the ALJ found that in light of the other credibility issues identified, the score strongly suggests that Plaintiff exaggerated some of his symptoms during the test. As discussed below, the Court concludes that the ALJ properly discounted Dr. Richardson's opinion with respect to Plaintiff's limitations and disability. As such, it was reasonable for the ALJ to disregard Dr. Richardson's interpretation of these scores.

Finally, the ALJ stated that Plaintiff's prior conviction for Second Degree Burglary, which the ALJ called a "crime of dishonesty," further weakened Plaintiff's overall credibility.[1]

---

[1] Plaintiff argues that this is contrary to SSR 16-3p. Effective March 16, 2016, the Commissioner superseded Social Security Rule ("SSR") 96-7p governing the assessment of a claimant's "credibility" and replaced it with a new rule, SSR 16-3p. *See* SSR 16-3p, *available at* 2016 WL 1119029. SSR 16-3p eliminates the reference to "credibility," clarifies that "subjective symptom evaluation is not an examination of an individual's character," and requires the ALJ to consider of all of the evidence in an individual's record when evaluating the intensity and persistence of symptoms. *Id.* at *1-2. The Commissioner recently republished the rule, making March 16, 2016, the "applicable date," rather than the "effective date." *See* SSR 16-3p, *available at* 2017 WL 5180304 (Oct. 25, 2017). The Commissioner clarified that "[w]hen a Federal court reviews our final decision in a claim, we expect the court will review the final decision using the rules that were in effect at the time we issued the decision under review." *Id.*

The Court disagrees, however, with the ALJ's assertion that burglary is a "crime of dishonesty." *See United States v. Foster*, 227 F.3d 1096, 1100 (9th Cir. 2000) (citing *United States v. Glenn*, 667 F.2d 1269, 1273 (9th Cir. 1982) for the holding that "burglary and grand theft are not per se crimes of dishonesty"). The ALJ does not otherwise explain how Plaintiff's criminal conviction bore on his credibility. *See Fritz v. Berryhill*, 685 F. App'x 585, 586 (9th Cir. 2017) ("[T]he ALJ did not explain how Fritz's unrelated 21-year-old robbery conviction impacted his credibility."). As such, this was not a legitimate reason to disregard Plaintiff's testimony.

## C. Medical Evidence

The ALJ is responsible for resolving conflicts in the medical record, including conflicts among physicians' opinions. *Carmickle*, 533 F.3d at 1164. The Ninth Circuit distinguishes between the opinions of three types of physicians: treating physicians, examining physicians, and non-examining physicians. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). Generally, "a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001). If a treating physician's opinion is supported by medically acceptable techniques and is not inconsistent with other substantial evidence in the record, the treating physician's opinion is given controlling weight. *Id.*; *see also* 20 C.F.R. § 404.1527(d)(2). A treating doctor's opinion that is not contradicted by the opinion of another physician can be rejected only for "clear and convincing" reasons. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). If a treating doctor's opinion is contradicted by the opinion of another physician, the ALJ must provide "specific and legitimate reasons" for discrediting the treating doctor's opinion. *Id.*

at *13 n. 27. Because the ALJ's decision in this case was made before March 16, 2016, the Court reviews the ALJ's decision under SSR 96-7p.

In addition, the ALJ generally must accord greater weight to the opinion of an examining physician than that of a non-examining physician. *Orn*, 495 F.3d at 631. As is the case with the opinion of a treating physician, the ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990). If the opinion of an examining physician is contradicted by another physician's opinion, the ALJ must provide "specific, legitimate reasons" for discrediting the examining physician's opinion. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). An ALJ may reject an examining, non-treating physician's opinion "in favor of a nonexamining, nontreating physician when he gives specific, legitimate reasons for doing so, and those reasons are supported by substantial record evidence." *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995), *as amended* (Oct. 23, 1995). Specific, legitimate reasons for rejecting a physician's opinion may include its reliance on a claimant's discredited subjective complaints, inconsistency with medical records, inconsistency with a claimant's testimony, and inconsistency with a claimant's daily activities. *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008); *Andrews*, 53 F.3d at 1042-43.

### 1. Dr. Richardson

Dr. Richardson conducted a psychological assessment of Plaintiff in February 2012. AR 431-439. Before the assessment, Dr. Richardson had seen Plaintiff for four private psychotherapy sessions. AR 431. Dr. Richardson interviewed Plaintiff and administered several tests. AR 432. Dr. Richardson concluded that Plaintiff has "some level of impairment in executive function specifically related to [i]nitiation and [o]rganization of [m]aterials." AR 434. Other objective testing was in the average or high-average range. AR 434-436. Dr. Richardson described issues with mood, cognition, and interpersonal relations, based on an interview and Plaintiff's reports. AR 435-436. Dr. Richardson reported that Plaintiff's has the "intellectual

function to function independently, although psychological issues and lack of social skill development would cause problems." AR 438. Dr. Richardson recommended therapy.

Dr. Richardson also opined that "[m]edications may be of some value but will require close integration with psychotherapy . . . [e]ven with stabilization, it is unlikely that [Plaintiff] will be able to successful [sic] engage in gainful employment without significant support and vocational rehabilitation." AR 438. Dr. Richardson assessed marked limitations in several areas, and moderate limitations in others. AR 440-441.

The ALJ give Dr. Richardson's opinion little weight. Because Dr. Richardson's opinion with respect to Plaintiff's level of functioning contradicted those of other examiners, the ALJ was required to provide specific, legitimate reasons, supported by substantial evidence, to disregard the opinion. The ALJ found that Dr. Richardson's opinion regarding Plaintiff's cognitive and social functioning were "grossly inconsistent with the overall medical evidence of record," including, in part, Dr. Richardson's own findings. AR 26. The ALJ also stated that Dr. Richardson's opinion "appeared to rely heavily on the claimant's subjective symptoms." AR 26.

### a. Inconsistency with Medical Record

Consistency with the evidence as a whole is a valid consideration in evaluating medical opinions. 20 C.F.R. § 404.1527(c)(4). Additionally, an "ALJ need not accept the opinion of any physician . . . if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Bray v. Comm'r*, 554 F.3d 1219, 1228 (9th Cir. 2009). "A conflict between treatment notes and a treating provider's opinions may constitute an adequate reason to discredit the opinions of a treating physician or another treating provider." *Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014).

The ALJ opined that Dr. Richardson failed to properly account for the results of the Minnesota Multiphasic Personality Inventory-2 test, which indicated over-reporting of mental health symptoms. Dr. Richardson wrote that Plaintiff's scores on this test "indicated over-reporting." AR 435. Dr. Richardson did address these scores, concluding that "[w]hen these scores were examined using validity measures and in terms of [Plaintiff's] actual symptoms, the elevation is more likely to be a reflection of the level of dysfunction and emotional crisis that [Plaintiff] is experiencing." AR 435. For an ALJ to conclude that a medical opinion is not supported by objective findings or evidence, an ALJ "must set forth [her] own interpretations and explain why they, rather than the doctors' are correct." *Regennitter v. Comm'r*, 166 F.3d 1294, 1299 (9th Cir. 1999). The ALJ explained that she disagreed with Dr. Richardson's interpretation of this test because of other evidence undermining Plaintiff's subjective complaints. This was a valid reason to disregard Dr. Richardson's opinion on this point.

The ALJ also pointed out that Plaintiff's activities of daily living were not reported to Dr. Richardson, and showed a level of functioning inconsistent with Dr. Richardson's limitations. AR 26. For instance, the ALJ pointed out, Plaintiff was able to enjoy an active social life, play video and board games, create videos, and compose music. As discussed above, the Court concludes that the ALJ's interpretation of Plaintiff's activities is supported by the record. This constitutes a specific and legitimate reason to discredit Dr. Richardson's opinion with respect to Plaintiff's level of functioning and disability.

Finally, the ALJ found that Dr. Richardson's opinion was internally inconsistent in that the tests administered did not reveal marked limitations in cognitive functioning. The ALJ appears to suggest that Dr. Richardson opined that Plaintiff has marked limitations in cognitive functioning. This is not supported by the record. Dr. Richardson did note that Plaintiff was

markedly limited in "[t]he ability to maintain attention and concentration for extended periods," and in several other areas of concentration and persistence. AR 441. These do not, however, conflict with Dr. Richardson's cognitive findings. In fact, Dr. Richardson specifically noted that Plaintiff "does have the intellectual function to function independently," but opined that it would be Plaintiff's "psychological issues and lack of social skill development" that would "cause problems." AR 438. Thus, this reason for discounting Dr. Richardson's opinion is not supported.

### b. Relying on Plaintiff's Self-Reporting

"A physician's opinion of disability 'premised to a large extent upon the claimant's own accounts of his symptoms and limitations' may be disregarded where those complaints have been 'properly discounted.'" *Morgan v. Comm'r*, 169 F.3d 595, 602 (9th Cir. 1999) (quoting *Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989)). This issue is complicated, however, in the context of psychiatric evaluations, which "may appear subjective," but "will always depend on part on the patient's self-report, as well as on the clinician's observations of the patient." *Buck v. Berryhill*, 869 F.3d 1040 (9th Cir. 2017). "Thus, the rule allowing an ALJ to reject opinions based on self-reports does not apply in the same manner to opinions regarding mental illness." *Id*. In *Buck*, the Ninth Circuit concluded that because a psychiatric evaluation involved "a clinical interview and a mental status evaluation" in addition to a review of the claimant's self-reports, the doctor's "partial reliance on [the claimant's] self-reported symptoms [was] . . . not a reason to reject his opinion." *Id*.

Here, Dr. Richardson conducted a slew of objective tests. Although Dr. Richardson's findings with respect to Plaintiff's limitations do appear to be based primarily in Plaintiff's reporting, this reporting was obtained through a clinical interview, and Dr. Richardson also conducted a mental status evaluation. As such, although the ALJ properly discredited Plaintiff's own testimony, this was not a proper reason to disregard Dr. Richardson's report. Nonetheless,

because the ALJ gave at least one specific and legitimate reason for discounting

Dr. Richardson's opinion, the Court upholds the decision to do so.

### 2. Dr. Cole

Gregory A. Cole, Ph.D., performed a psychodiagnostic evaluation on June 20, 2013.

AR 512-17. Dr. Cole observed fairly normal mental status upon exam, but noted "a severe level

of self-reported depression symptomology." AR 515. Dr. Cole did not actually assess any

specific limitations, but opined that if Plaintiff were to pursue employment, Plaintiff's "anxiety

would be the primary factor" that "would impact his overall vocational success." AR 516.

The ALJ assigned some weight to Dr. Cole's opinion, at least with respect to Dr. Cole's

cognitive findings. The ALJ assigned little weight, however, to Dr. Cole's opinion with regard to

Plaintiff's anxiety-related limitations. The ALJ stated that Dr. Cole's opinion on this matter was

not in line with Plaintiff's demonstrated activities in his personal life. The ALJ also noted that

Dr. Cole was not aware of the extent of Plaintiff's active social life.

Inconsistency between a doctor's opinion and a claimant's daily activities is a specific

and legitimate reason to discount that doctor's opinion. *See Ghanim v. Colvin*, 763 F.3d 1154,

1162 (9th Cir. 2014) (citing *Morgan v. Comm'r*, 169 F.3d 595, 600-02 (9th Cir. 1999)). Plaintiff

argues that Dr. Cole's report demonstrates that he *was* aware of Plaintiff's activities in his

personal life. Plaintiff points out that Dr. Cole wrote that Plaintiff enjoys "watching TV, playing

guitar, playing video games, and seeing his friends twice a month." AR 516. Plaintiff testified at

his hearing, however, that he saw his friends about three times per week—whereas Dr. Cole's

report notes that Plaintiff saw friends "twice a month."

As Defendant argues, Dr. Cole did not actually assign any limitations, or even make an

opinion about the extent to which Plaintiff's anxiety would impact his life or his ability to work.

Thus, it is not clear that there was anything contained in the report that the ALJ truly "rejected."

But, to the extent Dr. Cole implied that Plaintiff's anxiety would prevent him from working, the Court concludes that the ALJ reasonably interpreted the evidence regarding Plaintiff's social and other activities, as discussed above. The ALJ did not err in her consideration of Dr. Cole's report.

## CONCLUSION

The decision of the Commissioner is AFFIRMED.

**IT IS SO ORDERED**.

DATED this 20th day of June, 2018.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge